510 S.E.2d 465

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

George A. EASTON, Defendant
Below, Appellant.

State of West Virginia, Plaintiff
Below, Appellee,

v.

Kevin True, Defendant Below, Appellant.

Nos. 25057, 25058.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 9, 1998.

Decided Dec. 7, 1998.

632

Daniel R. James, Barr, James & Pancake, P.L.L.C., Keyser, West Virginia, Attorney for Appellants Easton and True.

Darrell V. McGraw, Jr., Attorney General, Victor S. Woods, Kristine M. Howard, Assistant Attorneys General, Charleston, West Virginia, Attorneys for the Appellee.

DAVIS, Chief Justice:

Defendants below, George A. Easton and Kevin True,[1] appeal from sentencing orders entered September 11, 1997, by the Circuit Court of Hampshire County. Both defendants previously had been convicted of the felony offense of the willful creation, by a custodian, of an emergency situation for an incapacitated adult and misdemeanor battery, which crimes were committed when the defendants were called upon to restrain a patient residing in a personal care home where they were employed. As a result of these convictions, the circuit court sentenced each defendant to a term of confinement of not less than two years nor more than ten years in the West Virginia State Penitentiary for their felony offense and a term of one year in the Hampshire County Jail for their misdemeanor crime, to be served concurrently with the indeterminate term for the felony offense. Upon a review of the parties' arguments on appeal, the record established in

this case, and the pertinent authorities, we affirm the decision of the Circuit Court of Hampshire County. In rendering this decision, we find the penal statute under which defendants Easton and True were convicted of willfully creating an emergency situation for an incapacitated adult, former W. Va. Code § 9–6–15(b) (1984) (Repl.Vol.1990), to be constitutional. We also determine that the circuit court did not err in upholding the defendants' convictions or imposing sentences thereon as the record evidence sufficiently supported their convictions; that their sentences, which were imposed in accordance with a repealed penal statute, were authorized by law; and that their multiple convictions did not violate double jeopardy considerations.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The evidence presented to the jury suggests the following facts. At the center of the events giving rise to the defendants' crimes and their resultant sentences at issue in this appeal is a young man with mental impairments [hereinafter "the patient"] who had been placed in a residential personal care facility. The patient's medical history included mild mental retardation, schizophrenia, and self-injurious behavior. Having been determined to constitute a safety threat to himself and others, he was placed in one care home and then transferred to the Concord home in Hampshire County, West Virginia.[2] On the day of his arrival at Concord, September 5, 1996, the patient attempted to leave the facility, wearing no shoes or shirt, and was found walking in the middle of a state highway. Upon his return to Concord, the patient engaged in self-injurious behavior, including repeatedly banging his head on the floor and hitting himself. As a result of the patient's proclivities, Concord assigned a

---

1. Defendant True is defendant Easton's step-son.

2. Throughout his stays at both Concord and the predecessor home, the patient received various medications, in varying amounts, in an attempt to control or temper his anger and violent tendencies. However, it appears that, at Concord,

the patient was not heavily sedated as he had been at the prior care facility. It also has been reported that, upon his arrival at Concord, the patient exhibited a black eye and various bruises, which he had sustained while housed at the prior facility.

house counselor, Harry Eugene Hutts, Jr. [hereinafter "Hutts"], to monitor his behavior.[3] More specifically, Hutts was directed to monitor the patient's bedroom to ensure that he did not again attempt to leave Concord or engage in self-injurious behavior.

Mr. Hutts testified that, on September 8, 1996, in spite of his supervision, the patient's aggression again manifested itself. Having obtained permission from Hutts to leave his room to go to the restroom, the patient, instead of returning to his room, attempted to leave the group home. In an effort to prevent the patient's unauthorized departure, Hutts blocked the door. Responding to Hutts' actions, the patient hit Hutts with a large potted plant and threw a medicine box at him. Hutts, who was a relatively new employee at Concord and who had not yet been trained to restrain physically aggressive patients, testified that he called for help. Three other house counselors assigned to the patient's home responded: defendants Easton and True, and a third individual. Easton reportedly instructed Hutts to "move to the kitchen and stay out of the way," and the three house counselors, Easton, True, and the third person, performed a "take down" maneuver, whereby an uncontrollable patient is held by the arms and lowered to the ground in an attempt to calm the individual and minimize the risk of harm to the patient and others.[4] Hutts then observed, for the next two and one-half hours, the three house counselors repeatedly strike the patient with their fists and open hands, kick him, and curse him. Following this incident, defendant True transported the patient to a nearby medical center where he was noted to have had numerous contusions to his eyes, face, lips, shoulders, and back, but no lacerations or broken bones. The patient was released after being prescribed an over-the-counter analgesic. On September 10, 1996, the patient's family withdrew him from the Concord facility and sought additional medical evaluations of his medical condition resulting from the Concord incident of two days previous.

Thereafter, Easton and True were each charged with two criminal offenses arising from their actions on September 8, 1996, involving the patient[5]: malicious or unlawful assault, a felony pursuant to W. Va.Code § 61–2–9(a) (1978) (Repl.Vol.1997),[6] and willful creation, by a custodian or caretaker, of an emergency situation involving an incapacitated adult, a felony under W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990)[7]. On January

---

3. The Concord facility is comprised of an administration building, classroom facilities, and four group homes. Each group home houses approximately ten patients. Several house counselors are assigned to each home to assist the residents with their care and activities of daily living.

4. Concord, not being a secured facility, does not permit the use of chemical restraints, mechanical restraints, or "lock-downs" (isolating an uncontrollable patient in a locked room) to handle excessively aggressive patients. Thus, despite the patient's alleged repeated requests for medication to control his outburst, none of the house counselors was authorized to administer additional medications, above the patient's prescribed daily doses, to control his violent behavior.

5. It appears from the record evidence that the third house counselor also was criminally charged for his involvement in inflicting the patient's injuries during the incident of September 8, 1996. He pled no contest to the offense of willful creation of an emergency situation for an incapacitated adult and was sentenced for this crime. See *infra* note 7 defining crime of willful creation of an emergency situation.

6. W. Va.Code § 61–2–9(a) (1978) (Repl.Vol. 1997), describing malicious or unlawful assault, directs:

   If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

7. The crime of willfully creating an emergency situation for an incapacitated adult, set forth in W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990), provides:

   Any person having actual care, custody or control of an incapacitated adult who with the intent to abuse or neglect such adult willfully

7, 1997, both defendants were indicted on these charges, and, on March 18 and 21, 1997, a Hampshire County jury found defendants Easton and True, respectively, guilty of misdemeanor battery, as defined in W. Va.Code § 61–2–9(c) (1978) (Repl.Vol.1997),[8] and willfully creating an emergency situation for an incapacitated adult. Following the defendants' jury convictions, the West Virginia Legislature, in April, 1997, repealed W. Va.Code § 9–6–15,[9] see W. Va.Code § 9–6–15 (1997) (Repl.Vol.1998), and enacted a similar statute, W. Va.Code § 61–2–29 (1997) (Repl. Vol.1997),[10] which contained the same penalties as the repealed statute, but which redefined the illegal behaviors, omitting the crime of "willfully creat[ing] an emergency situation for an incapacitated adult." Subsequently, on August 27, 1997, the circuit court held a sentencing hearing during which it imposed upon each defendant a twelve-month term of confinement in the Hampshire County Jail for his battery conviction and an indeterminate term of incarceration in the West Virginia State Penitentiary of not less than two years nor more than ten years for his conviction of willfully creating an emer-

gency situation for an incapacitated adult. The court ordered each defendant's one-year county jail sentence to run concurrently with his indeterminate term of penitentiary incarceration. On September 11, 1997, orders were entered in both defendant Easton's and defendant True's criminal cases reflecting the sentences imposed during the sentencing hearing.

From these convictions and sentences, the defendants appeal to this Court. Because of the identity of the circumstances underlying the crimes with which the defendants were charged, the offenses of which they were convicted, and the sentences which they ultimately received, this Court, by order dated August 31, 1998, consolidated the individual appeals of defendants Easton and True for review and decisional purposes.

## II.

## DISCUSSION

On appeal to this Court, defendants Easton and True complain first that W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990), under which they were convicted of willfully creat-

---

creates an emergency situation for an incapacitated adult, is guilty of a felony, and, upon conviction thereof, shall, in the discretion of the court, be confined in the penitentiary for not less than two nor more than ten years or be confined in the county jail for not more than twelve months and fined not more than fifteen hundred dollars.

8. W. Va.Code § 61–2–9(c) (1978) (Repl.Vol. 1997), which defines the crime of misdemeanor battery, states:

> If any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than twelve months, or fined not more than five hundred dollars, or both such fine and imprisonment.

The defendants' convictions of battery under § 61–2–9(c), as opposed to the indictment charges of § 61–2–9(a) malicious or unlawful assault, were permitted because battery is a lesser included offense of malicious or unlawful assault. See Syl. pt. 1, State v. Neider, 170 W.Va. 662, 295 S.E.2d 902 (1982) (" 'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser

offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, State v. Louk, 169 W.Va. 24, 285 S.E.2d 432 (1981)."), and compare W. Va.Code § 61–2–9(c) (1978) (Repl.Vol.1997) (defining battery) with W. Va.Code § 61–2–9(a) (1978) (Repl.Vol. 1997) (defining malicious or unlawful assault). See, e.g., State v. Crabtree, 198 W.Va. 620, 625, 482 S.E.2d 605, 610 (1996) (recognizing battery as a lesser included offense of sexual assault).

9. The effect of the statutory repeal of W. Va.Code § 9–6–15 upon the defendants' convictions and consequent sentences will be discussed more fully in Section II.D., infra.

10. W. Va.Code § 61–2–29 (1997) (Repl.Vol.1997) mandates, in pertinent part:

> (c) Any care giver who intentionally abuses or neglects an incapacitated adult is guilty of a felony and, upon conviction thereof, shall, in the discretion of the court, be confined in the penitentiary for not less than two nor more than ten years or be confined in the county jail for not more than twelve months and fined not more than fifteen hundred dollars.

This law went into effect ninety days from its April 8, 1997, date of passage. 1997 Acts of the Legislature of West Virginia, Regular Session, ch. 72, at 484.

ing an emergency situation for an incapacitated adult, is unconstitutional. They also suggest that their convictions of battery and willful creation of an emergency situation and resultant sentences were improper based upon the insufficient evidence supporting such convictions. Furthermore, Easton and True maintain that the circuit court was not authorized to sentence them for the crime of willful creation of an emergency situation since the portion of W. Va.Code § 9–6–15 defining this offense and its punishment was repealed prior to the circuit court's imposition of sentence therefor. Lastly, they challenge the ability of the circuit court to convict and sentence them for battery and willfully creating an emergency situation in consideration of the principles of double jeopardy.[11] Following a brief examination of the applicable standard of review, we will address each of these contentions in turn.

### A. Standard of Review

■■■ In deciding the instant appeal, we refer generally to the standard of review applicable to jury verdicts.[12] Typically, when a case that has been tried before and decided by a jury is appealed to this Court, we afford great deference to the jury's decision. "A reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice." Syl. pt. 3, State v. Sprigg, 103 W.Va. 404, 137 S.E. 746 (1927). See also 1B Michie's Jurisprudence Appeal and Error § 267, at 480–81 (Repl.Vol.1995) (1996) ("It has ... been repeatedly held that a verdict fairly rendered ought not to be interfered with by the court, unless manifest wrong and injustice have

been done, or unless the verdict is plainly not warranted by the evidence." (footnote omitted)). This deferential standard stems from the supreme importance accorded the jury's fact-finding role. " 'The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.' Point 2, Syllabus, State v. Bailey, 151 W.Va. 796[, 155 S.E.2d 850 (1967) ]." Syl. pt. 3, State v. Knotts, 156 W.Va. 748, 197 S.E.2d 93 (1973). Thus, "[w]here the evidence presents issues of fact for jury determination and the jury has been fully and correctly instructed as to the law applicable to the case, its verdict is conclusive and will not be disturbed, there being otherwise no prejudicial error." Syl. pt. 5, State · v. Shaffer, 138 W.Va. 197, 75 S.E.2d 217 (1953). Guided by these principles, we now consider the defendants' assignments of error.

### B. Constitutionality of Former W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990)

■■■ The defendants first argue that W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) is unconstitutional, and, thus, that their convictions under this statute are invalid. They suggest that this statutory provision is unconstitutionally vague because a person "of common intelligence must necessarily guess at its meaning and differ as to its application," essentially asserting a violation of their rights to due process.[13] Defendants Easton and True further note that the appropriate inquiry is not what the Legislature intended when enacting the challenged penal statute, but what an ordinary person, reading the enactment's plain language, would under-

---

11. Our determination of the defendants' assignments of error challenging the sufficiency of the evidence and alleging the violation of double jeopardy principles involves substantially the same considerations as those raised by their assertions that the doctrines of lenity and specificity govern their appeals and that battery is a lesser included offense of willful creation of an emergency situation. Therefore, we decline as duplicitous further discussion of the lenity/specificity and lesser included offense arguments.

12. We will incorporate more specific standards of review, where appropriate, in our discussion

of the defendants' various assignments of error. See infra Sections II.C. and II.E.

13. The Due Process Clause of the United States Constitution directs that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law ...." U.S. Const. amend. V. Similarly, the West Virginia Constitution contains a Due Process Clause that provides "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va. Const. art. III, § 10.

stand the statute to proscribe. *Citing State v. Ball,* 164 W.Va. 588, 594, 264 S.E.2d 844, 847 (1980). In this regard, the defendants urge that, under the factual circumstances constituting their alleged criminal offenses, they reasonably believed that the victim, himself, had created an emergency situation and that they were acting solely to protect him from further self-inflicted harm.[14]

The State responds that the defendants failed to assert their constitutionality challenge during the lower court proceedings and that they are therefore precluded from raising this issue for the first time on appeal. *Citing* Syl. pt. 7, in part, *State v. Garrett,* 195 W.Va. 630, 466 S.E.2d 481 (1995) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." (internal quotations and citations omitted)). In the alternative, addressing the merits of the defendants' argument, the State replies that W. Va.Code § 9–6–15(b) is not unconstitutional because it provides adequate notice of the conduct proscribed by its terms. Contrary to the view espoused by the defendants, the State suggests that § 9–6–15(b) is not unconstitutionally vague because it is "set out with sufficient definiteness to give a person of

ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syl. pt. 1, in part, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974). The State urges that this statutory provision, while requiring reference to W. Va.Code § 9–6–1 (1984) (Repl.Vol.1998) for definitions of terms of art contained therein,[15] is sufficiently clear to place a person of ordinary intelligence on notice of the conduct prohibited by W. Va.Code § 9–6–15(b) and the resultant penalties to be imposed for such a violation.

Generally, "the question of constitutionality must be raised in the trial court." 1B Michie's Jurisprudence *Appeal and Error* § 83, at 244 (footnote omitted). *See also* 4 C.J.S. *Appeal and Error* § 208, at 286–87 (1993) (same). In evaluating the merits of this assignment of error, we have reviewed the evidentiary record developed below and can locate nothing to indicate that the defendants presented the constitutionality of W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) for consideration by the trial court. Despite the defendants' failure to properly preserve their constitutionality challenge, we never-

---

**14.** In support of their argument that W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) is unconstitutional, the defendants also contend, without authority, that in repealing § 9–6–15, the House Judiciary Committee determined the statute to be "too ambiguous and vague." This argument is not persuasive, however, as the determination of a statute's constitutionality is traditionally within the province of the Court, and not the Legislature. *See Kanawha County Pub. Library v. County Court of Kanawha County,* 143 W.Va. 385, 391, 102 S.E.2d 712, 716 (1958) ("[T]he principle was long ago established that the determination of whether a legislative act was in conflict with a constitutional provision was a question to be determined by the judicial branch of the government.") (citing *Marbury v. Madison,* 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803)). *See also State ex rel. Armbrecht v. Thornburg,* 137 W.Va. 60, 72, 70 S.E.2d 73, 80 (1952) ("[T]he Court is charged with the solemn duty of determining what acts of the Legislature are constitutional, and what acts have been passed by the Legislature in conformity with the demands of the Constitution, when such questions are properly presented to the Court."); *Price v. City of Moundsville,* 43 W.Va. 523, 525, 27 S.E. 218, 219 (1897) ("The Constitution of this State ... imposes on the judiciary the duty of deciding the constitutionality of a law

...."); 17 Michie's Jurisprudence *Statutes* § 27, at 345 (Repl.Vol.1994) (1994) ("The constitutionality of a statute is a question for the court." (footnote omitted)).

**15.** W. Va.Code § 9–6–1 (1984) (Repl.Vol.1998) defines the following terms employed by W. Va. Code § 9–6–15(b):

(2) "Abuse" shall mean the infliction or threat to inflict physical pain or injury on or the imprisonment of any incapacitated adult;

(3) "Neglect" shall mean (i) the failure to provide the necessities of life to an incapacitated adult with intent to coerce or physically harm such incapacitated adult or (ii) the unlawful expenditure or willful dissipation of the funds or other assets owned or paid to or for the benefit of an incapacitated adult;

(4) "Incapacitated adult" shall mean any person who by reason of physical, mental or other infirmity is unable to independently carry on the daily activities of life necessary to sustaining life and reasonable health;

(5) "Emergency" or "emergency situation" shall mean a situation or set of circumstances which presents a substantial and immediate risk of death or serious injury to an incapacitated adult.

theless are authorized to examine such an issue for the first time on appeal.

> [T]o be adjudged the right to invoke this [Court's] jurisdiction [to determine causes involving the constitutionality of a law], it must appear with reasonable certainty ... that a correct interpretation and construction of the challenged statute is vital to a just determination of the litigation.... Not every charge of infirmity in an enactment, however, will so operate. A mere factitious or spurious assertion of constitutional invalidity will not suffice. "The court will examine and determine for itself whether such claim is well founded; and, in order for jurisdiction to attach, it must affirmatively appear that a fairly debatable constitutional question was and is [necessarily] involved."

*Baer v. Gore,* 79 W.Va. 50, 53, 90 S.E. 530, 531–32 (1916) (quoting 3 C.J. *Appeal and Error* § 175, at 391 (1915) (footnotes omitted)) (additional internal quotations and citations omitted), *superseded by statute on other grounds as stated in Reynolds v. Board of Canvassers of Harrison County,* 117 W.Va. 770, 773, 188 S.E. 229, 230 (1936). *See also* Syl. pt. 1, *Price v. City of Moundsville,* 43 W.Va. 523, 27 S.E. 218 (1897) ("This Court is in duty bound to inquire into the constitutionality of an act of the legislature, when the question is properly presented for its consideration."); 1B Michie's Jurisprudence *Appeal and Error* § 83, at 244 ("[I]t has ... been held in certain cases that the unconstitutionality of a law need not be specially pleaded and may be raised for the first time in the appellate court. Thus, any proceeding which necessarily raises the issue of constitutionality ... is sufficient to give ... the supreme court of appeals jurisdiction ...." (footnotes omitted)). In this regard, not only must an interested party raise the constitutional challenge, but determination of the constitutional issue must be necessary and vital to the resolution of the appeal. *State v. Huber,* 129 W.Va. 198, 206, 40 S.E.2d 11, 17 (1946). *Cf.* Syl. pt. 2, *State v. Michael,* 141 W.Va. 1, 87 S.E.2d 595 (1955) ("Where a constitutional question, not involving the jurisdiction of the trial court or this Court, was not raised specifically in the trial court or in this Court, *and the decision of the question is not necessary to the decision of the case,* this Court will not *ex mero motu* consider the question." (emphasis added)).

With respect to the case *sub judice,* we conclude that a determination of the constitutionality of W. Va.Code § 9–6–15(b) is necessary and vital, indeed essential, to the determination of the cause before us. "An unconstitutional law is void and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." 17 Michie's Jurisprudence *Statutes* § 27, at 343–44 (footnote omitted). *See also* Syl. pt. 2, in part, *Committee on Legal Ethics of the West Virginia State Bar v. Triplett,* 180 W.Va. 533, 378 S.E.2d 82 (1988) ("An unconstitutional law is void ...."), *cert. granted sub nom., United States Dep't of Labor v. Triplett,* 493 U.S. 807, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989), *rev'd on other grounds,* 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990). Thus, an integral part of our evaluation of the defendants' assignments of error regarding their criminal convictions and consequent sentences is a determination of whether W. Va.Code § 9–6–15(b), the violation of which they were convicted and for which they were sentenced, is, in fact, a valid and enforceable penal statute. For the reasons explained below, we find that § 9–6–15(b) is constitutional.

■ The crux of the defendants' constitutionality argument is that W. Va.Code § 9–6–15(b) is "void for vagueness" because it does not satisfy the due process requirement that a penal statute be reasonably intelligible to those individuals who are required to conduct themselves in accordance therewith.[16] " 'Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment[,] but also of the severity of the penalty

---

**16.** See *supra* note 13 quoting Due Process Clauses of United States and West Virginia Constitutions.

that a State may impose.' " *State v. Miller,* 197 W.Va. 588, 599, 476 S.E.2d 535, 546 (1996) (quoting *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809, 826 (1996) (footnote omitted)). *Accord State ex rel. Morgan v. Trent,* 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227 (1972)). For this reason, then, "[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syl. pt. 1, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974). While

> [t]here is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions[,] [t]he basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language.

Syl. pt. 1, *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970).

Reviewing the text of W. Va.Code § 9–6–15(b), we are convinced that ·the statutory language sufficiently satisfies the requirements of notice of both the proscribed conduct and the possible penalties that may be imposed therefor. W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) states:

> Any person having actual care, custody or control of an incapacitated adult who with the intent to abuse or neglect such adult willfully creates an emergency situation for an incapacitated adult, is guilty of a felony, and, upon conviction thereof, shall, in the discretion of the court, be confined in the penitentiary for not less than two nor more than ten years or be confined in the county jail for not more than twelve months and fined not more than fifteen hundred dollars.

First, as aptly noted by the State, the various terms describing the conduct prohib-

ited by W. Va.Code § 9–6–15(b) are defined in the definitional section of this article. *See* W. Va.Code § 9–6–1 (1984) (Repl.Vol.1998). The first such term, "incapacitated adult," is defined in W. Va.Code § 9–6–1(4) as "any person who by reason of physical, mental or other infirmity is unable to independently carry on the daily activities of life necessary to sustaining life and reasonable health." Next follow the definitions for "abuse" or "neglect," to describe the nature of the "intent" that is criminalized by § 9–6–15(b). "Abuse" signifies "the infliction or threat to inflict physical pain or injury on or the imprisonment of any incapacitated adult." W. Va.Code § 9–6–1(2). Similarly, "neglect" contemplates either "(i) the failure to provide the necessities of life to an incapacitated adult with intent to coerce or physically harm such incapacitated adult" or "(ii) the unlawful expenditure ·or willful dissipation of the funds or other assets owned or paid to or for the benefit of an incapacitated adult." W. Va. Code § 9–6–1(3). Lastly, an "emergency situation" is described as "a situation or set of circumstances which presents a substantial and immediate risk of death or serious injury to an incapacitated adult." W. Va.Code § 9–6–1(5).

Second, the statute plainly and clearly establishes the possible criminal penalties that may·be imposed for the commission of conduct prohibited by § 9–6–15(b). In plain and clear language the statute admonishes that one who willfully creates an emergency situation for an incapacitated adult

> is guilty of a felony, and, upon conviction thereof, shall, in the discretion of the court, be confined in the penitentiary for not less than two nor more than ten years or be confined in the county jail for not more than twelve months and fined not more than fifteen hundred dollars.

W. Va.Code § 9–6–15(b).

In light of the satisfaction of the dual notice requirements, we conclude that W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) is constitutional and, thus, that the defendants' convictions and sentences in accordance

therewith were legally valid.[17]

### C. Sufficiency of the Evidence

The defendants additionally challenge the sufficiency of the evidence upon which their convictions for willful creation of an emergency situation are based.[18] With regard to these convictions, the defendants claim that the trial evidence failed to establish that they intended to abuse the patient or that they had created an emergency situation for him. First, they argue that, rather than intending to abuse the patient, they employed the "take down" maneuver in an effort to prevent the patient from inflicting further harm upon himself or others.

Additionally, they contend that they did not create the emergency situation with which the patient was faced. Instead, they suggest that the patient, himself, by his actions of attempting to flee the Concord facility and becoming increasingly violent and aggressive towards house counselor Hutts, created the emergency situation with which he was faced on September 8, 1996. In support of this contention, the defendants state that after Hutts thwarted the patient's attempt to flee, the patient hit Hutts with a large potted plant and threw a medicine box at him. Moreover, the defendants bolster their contention that the patient created the emergency situation by pointing to the fact that Hutts, himself, was unable to control the patient's violent outburst and required the assistance of three additional house counselors to calm the patient's rage. Thus, they claim that they did nothing more than respond to Hutts' calls for assistance in suppressing the emergency situation created by the patient.

By contrast, the State contends that the trial evidence adequately established that the defendants intended to abuse the patient and that they willfully created the emergency situation into which the patient was placed.[19] In support of its contention that the evidence sufficiently established the defendants' intent to abuse the patient, the State notes that upon coming to Hutts' aid, Easton directed Hutts to "move to the kitchen and stay out of the way," rather than permitting his new coworker to assist with the "take down" or observe how the maneuver should be performed. In addition, Hutts testified that, during the beating of the patient, he heard the three house counselors call the patient names, curse him, and chastise him for not being on better behavior, further evincing the presence of an intent to abuse the patient in order to obtain his compliance with Concord house policies.

The State further rejects the defendants' position that it was the patient who created the emergency situation of September eighth. While the State agrees that the patient could have created an emergency situation upon his flight attempt and violent retaliation towards Hutts, the State urges that this emergency situation ended and a new emergency situation arose from the defendants' intent to abuse the patient. The second emergency situation then escalated when the defendants, having regained control of the patient, nevertheless continued to restrain him, tore his clothes, and repeatedly cursed, kicked, pushed, and otherwise hit him for approximately two and one-half hours.

▪ In presenting their arguments of evidentiary insufficiency, the defendants present two main theories. First, the defendants

---

**17.** We note that our finding of constitutionality with respect to W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) is limited to this particular statutory enactment that was in effect at the time defendants Easton and True perpetrated the crimes of which they were convicted. We render no decision as to whether subsequent amendments to or reenactments of this statute are constitutional.

**18.** See *supra* note 7 for the text of W. Va.Code § 9–6–15(b), defining the crime of willful creation of an emergency situation for an incapacitated adult.

**19.** The State also contends that the record evidence is replete with eyewitness testimony from which a jury could have found sufficient evidence with which to convict the defendants of battery. As the defendants do not challenge on appeal the sufficiency of the evidence supporting their battery convictions, we decline further to address this argument. See *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal." (citation omitted)).

assert that the evidence does not demonstrate that they intended to abuse the patient. Second, the defendants contend that the evidence does not prove that they, as opposed to the patient, created the emergency situation with which the patient was faced. Despite these articulated theories of insufficient evidence, though,

> criminal defendant[s] challenging the sufficiency of the evidence to support a conviction take[ ] on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . .

Syl. pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). *See also State v. LaRock*, 196 W.Va. 294, 303, 470 S.E.2d 613, 622 (1996) ("A convicted defendant who presses a claim of evidentiary insufficiency faces an uphill climb. The defendant fails if the evidence presented, taken in the light most agreeable to the prosecution, is adequate to permit a rational jury to find the essential elements of the offense of conviction beyond a reasonable doubt. Phrased another way, as long as the aggregate evidence justifies a judgment of conviction, other hypotheses more congenial to a finding of innocence need not be ruled out. We reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Accordingly, in evaluating the defendants' claims of insufficiency, this Court's

> function . . . is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163. *See also* Syl. pt. 2, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 ("When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.").

■■■■ With respect to the defendants' first contention, we conclude that the evidence was sufficient to establish that the defendants possessed an intent to abuse the patient. To be found guilty of having willfully created an emergency situation for an incapacitated adult, the defendant must have had "the intent to abuse *or* neglect such adult." W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990) (emphasis added). "We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." *State v. Rummer*, 189 W.Va. 369, 377, 432 S.E.2d 39, 47 (1993) (internal quotations and citations omitted). Thus, either an intent to abuse or an intent to neglect satisfies the statutory criteria.

W.Va.Code § 9–6–1(2) (1984) (Repl.Vol. 1998) defines "abuse" as "the infliction or threat to inflict physical pain or injury on or the imprisonment of any incapacitated adult." From the evidence presented at trial, "any rational trier of fact could have found the essential elements of ['abuse'] proved beyond a reasonable doubt ." Syl. pt. 1, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163. The evidence adduced at trial indicated that Easton and True responded to Hutts' call for assistance and performed a "take down" ma-

neuver in order to calm the patient and regain supervisory control over him. In fact, the evidence suggested that such a "take down" was necessary given Hutts' inability to control the patient's violent and aggressive outburst by himself. However, the remainder of the evidence presented at trial does not support the defendants' theory that they intended no harm to befall the patient and that they merely were attempting to protect the patient and others from further harm as a result of the patient's actions. Not only did the defendants not stop their activities at simple physical restraint, but they proceeded to beat the patient, by striking him in the face and back, continuously for two and one-half hours. Furthermore, a reasonable person could have concluded that the defendants' actions in cursing the patient and calling him names were not in furtherance of a purported attempt to guard him from further harm but were more likely an additional form of abuse by verbal means. Therefore, we find the evidence to have been sufficient "to convince a reasonable person of the defendant[s'] guilt beyond a reasonable doubt" of having an intent to abuse the patient, an incapacitated adult. *See* Syl. pt. 1, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163.

▪▪▪ Similarly, in response to the defendants' second contention that the patient, and not they, created the emergency situation into which the patient was placed on September 8, 1996, we find sufficient evidence from which the jury could have found that the defendants, themselves, were responsible for the creation of the emergency situation. W. Va.Code § 9-6-15(b) enjoins the willful creation of an emergency situation as follows: "[a]ny person having actual care, custody or control of an incapacitated adult who with the intent to abuse or neglect such adult willfully creates an emergency situation for an incapacitated adult, is guilty of a felony ...." An "emergency situation" is "a situation or set of circumstances which presents a substantial and immediate risk of death or serious injury to an incapacitated adult." W. Va.Code § 9-6-1(5). Therefore, the deliberate or intentional creation of circumstances posing a substantial and immediate risk of serious injury or death to an

incapacitated adult fulfills the requisite elements of the applicable penal statute, § 9-6-15(b).

The trial evidence was sufficient to have permitted a "rational trier of fact [to] have found the essential elements of ['willful creation of an emergency situation'] proved beyond a reasonable doubt." Syl. pt. 1, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163. Viewing, as we must, the evidence in the light most favorable to the prosecution, *i.e.*, the State, we take pause at the State's suggestion that there existed two emergency situations: one created by the patient upon his attempted flight and a second one created by the defendants in response to Hutts' requests for assistance. While the jury arguably could have found that the patient created an emergency situation for himself by way of self-inflicted injuries, it is clear that there was created only one emergency situation as contemplated by the statute proscribing such conduct, W. Va.Code § 9-6-15(b), and that this emergency situation was created by the defendants.

The definition of the criminalized conduct contemplates the willful creation of an emergency situation for an incapacitated adult by a person who has the care, control, or custody of such adult and who has an intent to abuse or neglect said adult. Under the facts presented to the jury, a reasonable person could have found that the defendants, who were charged with the patient's care, control, and physical custody, deliberately placed the patient in a position of substantial and immediate risk of serious injury or death. The continuous physical abuse of the patient, involving hitting and pummeling, which endured for two and one-half hours, severely threatened the patient's health and welfare. Thus, because we find that the record contained sufficient evidence upon which a jury could have based their conclusions that the defendants willfully created an emergency situation for the patient, we conclude that the evidence was sufficient to support their convictions under W. Va.Code § 9-6-15(b).

*D. Imposition of Sentence for Crimes Committed under Former W. Va.Code § 9-6-15(b) (1984) (Repl.Vol.1990)*

▪▪▪ Next, the defendants assert that because W. Va.Code § 9-6-15(b) (1984) (Repl.

Vol.1990) was repealed before the circuit court sentenced them for their convictions under this statute, the circuit court lacked the authority to punish them for a crime that no longer existed in the law of this State. Although the Legislature re-enacted a portion of former W. Va.Code § 9–6–15 in the new criminal statute, W. Va.Code § 61–2–29 (1997) (Repl.Vol.1997), it failed to include in the new enactment the crime of willful creation of an emergency situation for an incapacitated adult. As the re-enactment of the remainder of former § 9–6–15 does not contain a savings clause, the defendants contend that the general savings clause contained in W. Va.Code § 2–2–8 (1923) (Repl.Vol.1994) governs the propriety of their sentences:

> *The repeal of a law,* or its expiration by virtue of any provision contained therein, *shall not affect any* offense committed, or *penalty or punishment incurred, before the repeal took effect,* or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.

(Emphasis added).

Since the defendants were not punished "before the repeal took effect," referencing the general savings clause in W. Va.Code § 2–2–8, they argue that they cannot now be sentenced under a repealed statute, W. Va. Code § 9–6–15(b), that no longer has any force or effect. Furthermore, they urge that if the penalty for their crimes had been reduced, as opposed to the governing statute having been completely repealed, they would have received the benefit of the lesser penalties. Thus, they suggest that the complete repeal of § 9–6–15(b), the result of which is to establish no crime and no penalty for the defendants' behavior, is the equivalent of a legislative reduction or mitigation of sentence for a crime continuing in existence, of which they should receive the benefit of commensu-

rate sentencing. Finally, the defendants maintain that the Legislature's decision to decriminalize the act of willfully creating an emergency situation for an incapacitated adult signifies that the Legislature no longer deems this conduct to be offensive. To now punish the defendants for behavior that is no longer intended to be criminal in nature, they insist, would, in essence, be contrary to the legislative intent to abrogate the penalties for such conduct.

Responding to the defendants' assertions, the State maintains that W. Va.Code § 9–6–15(b) has not been absolutely repealed but that it has merely been amended and recodified at W. Va.Code § 61–2–29. In this manner, the State claims that the language of § 61–2–29(c) [20] is virtually identical to the terminology of former § 9–6–15(b) [21] and contains the same penalties for the felony offense described therein. Substantively, the new statute requires the actual abuse or neglect of an incapacitated person as opposed to formerly requiring only the intent to do so. In addition, the new statute omits the requirement that an emergency situation have been created for the incapacitated adult, which, the State argues, primarily had the effect of increasing the scope of punishable conduct since an emergency situation, consisting of a "substantial and immediate risk of death or serious injury," is no longer a prerequisite to a finding of criminal activity.

Lastly, the State represents that even if W. Va.Code § 9–6–15(b) is deemed to have been absolutely repealed, such a repeal would not insulate the defendants from sentencing for the crimes they committed under this statute when it was a part of the criminal law of this State. "The rule in West Virginia is that the statute in force at the time of the commission of an offense governs the character of the offense and, generally, the punishment prescribed thereby." *State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 9, 260 S.E.2d 820, 822 (1979) (citations omitted). *Citing also* W. Va.Code § 2–2–8. As the defendants both committed the crime described in § 9–6–15(b) and were convicted of

---

**20.** See *supra* note 10 for the text of W. Va.Code § 61–2–29(c) (1997) (Repl.Vol.1997).

**21.** See *supra* note 7 for the text of W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990).

this offense prior to the repeal of this statute, the State maintains that it is evident from the law of this State announced in *Arbogast* and W. Va.Code § 2–2–8 that the defendants have not been relieved of their criminal liability for their § 9–6–15(b) offenses and that they may properly be punished in accordance with this former statute.

■ Reviewing the parties' arguments on this matter, we conclude that the resolution of this issue is rather facile. The defendants are correct in their assertions that the general savings statute, W. Va.Code § 2–2–8 (1923) (Repl.Vol.1994), governs this situation because the repeal and re-enactment of former W. Va.Code § 9–6–15 (1984) (Repl.Vol. 1990) achieved by current W. Va.Code § 61–2–29 (1997) (Repl.Vol.1997) does not contain a specific savings clause applicable to the offense of willful creation of an emergency situation for an incapacitated adult. To this end, W. Va.Code § 2–2–8 provides, in relevant part:

> The repeal of a law ... shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect ... save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time

such proceedings take place, unless otherwise specially provided ....

Thus, W. Va.Code § 2–2–8 "operates to preserve prosecution of offenses committed under a repealed statute which have not reached final judgment [22]." *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 10, 260 S.E.2d 820, 823 (1979) (footnote added).

■ This Court has variously explained the function of W. Va.Code § 2–2–8 under circumstances involving the commission of a criminal offense proscribed by a penal statute that is later repealed or amended and re-enacted before the case has reached final judgment. Governing our interpretation of the general savings clause is the recognition of the longstanding rule in this State that "[t]he statute in force at the time of the commission of an offense governs the character of the offense, and generally the punishment prescribed thereby, unless, as provided by our statute, the defendant elects to be punished as provided in an amendment thereof." Syl. pt. 4, *State v. Wright*, 91 W.Va. 500, 113 S.E. 764 (1922) (referencing Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338) (Main Vol.1914) [23]). *Accord Arbogast*, 164 W.Va. at 9, 260 S.E.2d at 822. *See also State v. Wright*, 91 W.Va. at 504, 113 S.E. at 766 ("The old law governs cases arising before an amended statute takes effect, unless

22. "[A] final judgment ... is one which disposes of the whole subject, ... provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the judgment ...." 11A Michie's Jurisprudence *Judgments and Decrees* § 7, at 64–65 (Repl.Vol. 1997) (footnote omitted). "All judgments ... become final at the expiration of the term in which they are entered or after entry thereof in vacation." Syl. pt. 1, in part, *Pyles v. Coiner*, 152 W.Va. 473, 164 S.E.2d 435 (1968). *See also State v. Ludwig*, 102 W.Va. 363, 365, 135 S.E. 277, 278 (1926) ("Th[e] sentence [pronounced] becomes final at the end of the term at which it is declared.").

23. Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338) (Main Vol.1914) is the predecessor to this State's current general savings statute set forth in W. Va.Code § 2–2–8 (1923) (Repl.Vol.1994). As the language of these two provisions is virtually identical, subsequent references to Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338) will pertain also to W. Va.Code § 2–2–8. *Compare* Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec.

338) (Main Vol.1914) ("The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred before the repeal took effect, or the law expired, save only, that the proceedings thereafter had, shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.") *with* W. Va.Code § 2–2–8 (1923) (Repl.Vol.1994) ("The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.").

otherwise ordered." (citations omitted)). This Court has thus held that the general savings statute

> declares the repeal or expiration of the law shall not affect the offense committed, nor the penalty or punishment imposed therefor, beyond variation of the procedure. The saving clause is not an exception of any offense, penalty or punishment from the operation of the act. None of them are to be affected by the repeal or expiration. They all survive. But there is an exception or variation as to the procedure. In other words, the repeal or expiration affects nothing but the procedure . . . .

*Carlton v. Herndon,* 81 W.Va. 219, 220, 94 S.E. 131, 132 (1917) (interpreting Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338)). *See also State v. Sanney,* 91 W.Va. 477, 481, 113 S.E. 762, 764 (1922) ("[T]he offense if committed before the repeal is kept alive and also the penalty. The procedure alone is affected; it must conform to the new law as far as practicable. . . . It is the change in the procedure and not the elements of the offense which is affected by this section [Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338) ]." (citation omitted)). More recently, we have reiterated this holding by stating that "[a]n amendment to a penal statute which redefines the offense does not affect the character of the offense under the former law when the offense was committed prior to the effective date of the amendment. W. Va.Code § 2–2–8." Syl. pt. 1, *State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 260 S.E.2d 820.

█ In addition to having determined that the repeal or amendment of a penal statute does not change the nature or character of an offense committed before such repeal or amendment became effective, we also have announced that W. Va.Code § 2–2–8 specifically preserves the right of the State to prosecute an individual whose conduct was criminally prohibited at the time he/she engaged therein, even if the applicable penal statute is subsequently amended or repealed. "Insofar as the new law repeals the old, W. Va.Code § 2–2–8 preserves the right of prosecution and the characterization of the offense under the former law. This is the

effect of the statute and the clear intent of the Legislature." *Arbogast,* 164 W.Va. at 11, 260 S.E.2d at 823. "The penal part of the statute is clear. It maintains and keeps alive the old offense and penalty." *Carlton v. Herndon,* 81 W.Va. at 221, 94 S.E. at 132 (explaining Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338)). Accordingly, if a criminal statute "ha[s] been repealed, an offense committed under it, before repeal thereof, would not be condoned nor forgiven." *State v. Tippens,* 91 W.Va. 504, 506, 113 S.E. 751, 751 (1922) (citations omitted). Rather, the savings clause upholds "the right to punish for offenses committed under a repealed or expired law, before the repeal or expiration thereof." Syl. pt. 1, in part, *Carlton v. Herndon,* 81 W.Va. 219, 94 S.E. 131.

█ Furthermore, our jurisprudence in this realm has declared that, where a criminal statute is amended or repealed after the commission of a violation thereof but before final judgment has been rendered, the penalties proscribed for the previously prohibited conduct remain viable guidelines for punishment. In this regard we have held that

> [a] change in the definition and penalty of [a] crime is not a change in the procedure for the punishment thereof as is contemplated in Sec. 9, Chap. 13, Code, which provides that where a law is repealed, the offense committed or penalty or punishment incurred before the repeal took effect shall not be affected, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place.

Syl. pt. 2, in part, *State v. Sanney,* 91 W.Va. 477, 113 S.E. 762. In other words, "[t]he penalties prescribed under the former law remain intact." *Arbogast,* 164 W.Va. at 12, 260 S.E.2d at 824. Therefore,

> [t]he offense would be punishable under the statute which was in force at the time it was committed. Even if it was held that the old law has been repealed by the new and latest act, the crime, if committed while the old law was in effect, would be punishable under the provisions of the old act, except that, with the consent of the accused, the punishment or penalty, in

case mitigated by the later act may be applied.

*State v. Sanney,* 91 W.Va. at 479, 113 S.E. at 763 (applying Sec. 9, Chap. 13, W. Va.Code (Code 1913, sec. 338)).

This principle of preserving the punishment authorized at the time a penal statute has been violated is altered only insofar as the amended statute provides lesser or mitigated penalties for the same offense as that committed by the defendant. Under such circumstances, W. Va.Code § 2-2-8 contemplates "that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect." Consistent with this statutory directive we have held that "[w]hen a general savings statute specifically provides for the application of mitigated penalties upon the election of the affected party, he is entitled to choose the law under which he wishes to be sentenced. W. Va.Code § 2-2-8." Syl. pt. 2, *State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 260 S.E.2d 820.

▮ In keeping with and clarifying our prior decisions, we therefore hold that when a criminal defendant is convicted of a crime and the penal statute defining the elements of the crime and prescribing the punishment therefor is repealed or amended after his/her conviction of the crime but before he/she has been sentenced therefor, the sentencing court shall apply the penalties imposed by the statute in effect at the time of the offense, except where the amended penal statute provides for lesser penalties. If the amended penal statute provides lesser penalties for the same conduct proscribed by the statute in effect at the time of the offense, the defendant shall have an opportunity to elect under which statute he/she wishes to be sentenced, consistent with the statutory mandate contained in W. Va.Code § 2-2-8 (1923) (Repl.Vol.1994) and our prior directive set forth in Syllabus point 2 of *State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 260 S.E.2d 820 (1979).

Applying these axioms to the facts of the instant appeal, we note that the portion of W. Va.Code § 9-6-15(b) that criminalized the willful creation of an emergency situation for

an incapacitated adult was expressly repealed by the amendment and re-enactment of the remainder of § 9-6-15 in W. Va.Code § 61-2-29. *See* I Journal of House of Delegates of West Virginia, Seventy-third Legislature, Regular Session 1279, 1281 (1997) (characterizing alterations of W. Va.Code § 9-6-15 as a repeal of that section). *See also* W. Va.Code § 9-6-15 (1997) (Repl.Vol. 1998) (indicating repeal of W. Va.Code § 9-6-15); 1997 Acts of the Legislature of West Virginia, Regular Session, ch. 72, at 484 (same). As "[t]he criminality of [the defendants'] actions attached at the time they were performed, under the statute then in effect," *Arbogast,* 164 W.Va. at 11, 260 S.E.2d at 823, the then-applicable criminal statute, W. Va.Code § 9-6-15(b) (1984) (Repl.Vol. 1990), governs the nature of the defendants' convictions and punishments for their prohibited conduct of September 8, 1996.

The defendants do not specifically complain of the propriety of their convictions under this section, so this matter requires no further discussion other than an acknowledgment that they were properly convicted pursuant to the statute in effect at the time they committed their criminal transgressions. However, the defendants do argue that their sentences pursuant to W. Va.Code § 9-6-15(b) are improper given the Legislature's repeal of this penal statute prior to the imposition of such sentences. These arguments, though, are without merit and completely ignore our jurisprudential history which recognizes that not only may an individual be convicted of a crime in accordance with the criminal statute in effect at the time of his/her offense, but he/she may also be sentenced in conformity with the same criminal statute found to be applicable. Consistent with our holding and our prior precedents in this field, we find that the circuit court properly imposed upon the defendants those sentences authorized by W. Va.Code § 9-6-15(b) (1984) (Repl.Vol.1990) for the willful creation of an emergency situation for an incapacitated adult as this penal statute was in effect and governed the defendants' behavior at the time of their commission of the crimes of

which they have been convicted.[24]

### E. Double Jeopardy

■ Finally, the defendants complain that their convictions for battery and willful creation of an emergency situation, where both offenses arose from the same incident and involved the same victim, constituted a violation of their double jeopardy rights since they received two punishments for a single offense. "The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution* .... *prohibits multiple punishments for the same offense.*" Syl. pt. 1, in part, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977) (emphasis added by the defendants). *Citing also* U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...."). 

■ In determining whether multiple punishments have, in fact, been unjustifiably imposed, the defendants claim it is necessary to determine whether the Legislature intended the forbidden conduct to be punishable under the several applicable statutes or if it was intended that only one statute would determine the punishment for the prohibited conduct. *Citing Garrett v. United States*, 471 U.S. 773, 778–79, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985). "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Syl. pt. 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983). Where, however, the legislative intent is clear, the defendants suggest the foregoing test need not be applied. *Citing generally* Syl. pt. 5, in part, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996) ("[I]f two

statutes contain identical elements of proof, the presumption is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible."). Under the facts of this case, the defendants argue that, in the absence of a "clear and definite statement of intent," the Legislature intended but one punishment for the conduct which it prohibited via multiple statutory enactments, *i.e.,* W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990), willful creation of an emergency situation, and W. Va.Code § 61–2–9(c) (1978) (Repl.Vol. 1997), battery.

Contrariwise, the State maintains that the multiple convictions and consequent sentences imposed upon each defendant did not violate their double jeopardy rights because battery is not a lesser included offense of willful creation of an emergency situation and because each of these offenses have elements which the other does not. The State claims that the primary focus when determining whether multiple punishments for the same offense offend double jeopardy principles is to ascertain the legislative intent regarding the intended punishment(s) for the crime. Syl. pt. 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992).

In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense

---

**24.** While our holding today, W. Va.Code § 2–2–8, and our prior holding in Syllabus point 2 of *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 260 S.E.2d 820 (1979), permit a defendant to elect between punishments when amendments to a penal statute reduce the penalties that may be imposed, we find that no such right of election existed in the underlying proceedings. First, the applicable penal statute, W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990), was completely repealed by the subsequently-enacted law, W. Va.Code § 61–2–29. Second, even if it could be argued that the

amended and re-enacted penal statute, W. Va. Code § 61–2–29(c), retained an offense similar to that prohibited by W. Va.Code § 9–6–15(b), the penalties provided for both the § 9–6–15(b) offense and the § 61–2–29(c) offense are identical, *i.e.,* they both provide alternative punishment by way of (1) a two to ten year indeterminate sentence in the West Virginia State Penitentiary or (2) a county jail term of not more than twelve months plus a fine of not more than fifteen hundred dollars. *See* W. Va.Code §§ 9–6–15(b) and 61–2–29(c).

**650**

requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

Syl. pt. 8, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253. *Citing also State v. Sears,* 196 W.Va. at 82, 468 S.E.2d at 335 ("Absent evidence to the contrary, it is presumed the Legislature did not intend to punish the same offense under two statutes." (citation omitted)).

In this regard, the State contends that battery is not a lesser included offense of willful creation of an emergency situation because the difference in the requisite elements of these two offenses makes it possible to willfully create an emergency situation without having committed battery. "Battery," as defined in W. Va.Code § 61–2–9(c) (1978) (Repl.Vol.1997), prohibits "any person [from] unlawfully and intentionally mak[ing] physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally caus[ing] physical harm to another person ...." By contrast, "willful[ ] creat[ion of] an emergency situation for an incapacitated adult," the crime delineated by W. Va.Code § 9–6–15(b) (1984) (Repl.Vol.1990), proscribes "[a]ny person having actual care, custody or control of an incapacitated adult who [has] the intent to abuse or neglect such adult [from] willfully creat[ing] an emergency situation for [the] incapacitated adult." In other words, the elements of proof for battery are separate and distinct from the elements of proof for willful creation of an emergency situation.

Moreover, the State indicates that the clear legislative intent authorizes multiple punishments to be imposed for the same offense given the differing elements of proof required for battery and willful creation of an emergency situation. First, battery requires actual physical contact or harm, whereas willful creation of an emergency situation requires neither physical contact nor physical harm, but does require the intent to threaten or to inflict such harm and the placement of the incapacitated adult in a situation posing a substantial risk of such harm. Additionally, willful creation of an emergency situation contains elements of proof not found in the definition of battery: the perpetrator must be the custodian of an incapacitated adult, the victim must be said incapacitated adult, and the perpetrator must create an emergency situation for the victim, thereby engendering "a substantial risk of death or serious injury" to the victim. Given the differing components of each of the crimes of which the defendants were convicted and for which they were sentenced, the State urges that there was no violation of their double jeopardy rights.

Typically, we review *de novo* assignments of error which raise double jeopardy considerations. Syl. pt. 1, in part, *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324 (1996). Applying this standard to the contentions of the defendants, we are unable to discern any legal or factual support for their assertions that they have twice been placed in jeopardy for the same offense by virtue of their simultaneous convictions of and concurrent sentences for willful creation of an emergency situation and battery.

The Double Jeopardy Clause is contained in the Fifth Amendment to the United States Constitution and provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb ...." U.S. Const. amend. V. A key function of this Clause is to protect criminal defendants from receiving multiple punishments for the same offense. *See* Syl. pt. 1, in part, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992) ("The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution .... protects against multiple punishments for the same offense.").[25] In Syllabus point 3 of *State v. Gill,* we acknowledged that this federal mandate is imposed upon the states through the operation of the Fourteenth

**25.** The Double Jeopardy Clause also provides two other forms of protection to criminal defendants, neither of which are pertinent to the discussion of the defendants' assignments of error herein. *See* Syl. pt. 1, in part, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992) ("The Double

Jeopardy Clause of the Fifth Amendment to the United States Constitution .... protects against a second prosecution for the same offense after acquittal. It [also] protects against a second prosecution for the same offense after conviction.").

Amendment to the United States Constitution[26]: "In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that the Fifth Amendment constitutional guarantee against double jeopardy was binding on the states through the Fourteenth Amendment to the United States Constitution." 187 W.Va. 136, 416 S.E.2d 253. Notwithstanding these federal protections, the Constitution of this State also protects a criminal defendant from twice being placed in jeopardy for the same offense. *See* W. Va. Const. art. III, § 5 ("[N]or shall any person, in any criminal case, ... be twice put in jeopardy of life or liberty for the same offence."); Syl. pt. 1, in part, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977) ("The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution* .... prohibits multiple punishments for the same offense.").[27]

■ Primarily, "[t]he purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Syl. pt. 3, *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324. In other words, "[t]he double jeopardy bar against multiple punishments is to prohibit judges from imposing more penalty than the legislature has sanctioned." *State v. Myers,* 171 W.Va. 277, 280, 298 S.E.2d 813, 816 (1982) (citation omitted). *See also State v. Gill,* 187 W.Va. at 141, 416 S.E.2d at 258 (" 'With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' " (quoting *Missouri v. Hunter,* 459 U.S. 359,

366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983))).

■ Consequently, " '[[t]]he question of what punishments are constitutionally permissible is not different from the question of what punishment[s] the Legislative Branch intended to be imposed. Where ... [the Legislature] intended ... to impose multiple punishments, imposition of such sentences does not violate ... [double jeopardy].' " *State v. Sears,* 196 W.Va. at 80, 468 S.E.2d at 333 (quoting *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981) (footnote omitted)) (brackets in original). Thus, "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. pt. 7, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253.

■ The discernment of this legislative intent is a multi-faceted process.

In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

---

**26.** The Fourteenth Amendment provides, in relevant part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

**27.** As with the federal Double Jeopardy Clause, the West Virginia counterpart also contains additional protections which are not relevant to the instant appeal. *See* Syl. pt. 1, in part, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977) ("The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It [also] protects against a second prosecution for the same offense after conviction.").

Syl. pt. 8, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253. *See also* Syl. pt. 4, *State v. Gill, id.* (" '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180,. 182, 76 L.Ed. 306, 309 (1932) [ (citation omitted) ].");  Syl. pt. 8, *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983) (same). "Once the determination is made that statutory offenses are separate under the *Blockburger* test by virtue of the fact that each provision requires proof of an additional fact which the other does not, then multiple punishments are appropriate." *State v. Zaccagnini,* 172 W.Va. at 502, 308 S.E.2d at 142.

With respect to the criminal statutes at issue in this appeal, we cannot ascertain a clear legislative intent to permit multiple sentences for the same offense from either W. Va.Code § 61–2–9(c), defining battery, or W. Va.Code § 9–6–15(b), establishing the crime of willful creation of an emergency situation for an incapacitated adult. Thus, pursuant to Syllabus point 8 of *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253, we must scrutinize the individual penal statutes involved to determine whether multiple punishments are indeed appropriate. The inquiry here relevant is "whether each offense requires an element of proof the other does not." *Id.* Examining this statutory language, we agree with the arguments advanced by the State in this regard and find that the crimes of battery and willful creation of an emergency situation are indeed separate and distinct offenses as evidenced by their different elements of proof.

For example, the crime of battery requires direct physical contact with or actual physical harm to another individual. *See* W. Va.Code § 61–2–9(c). By contrast, such physical contact or physical harm are not elements of the crime of willful creation of an emergency situation. *See* W. Va.Code § 9–6–15(b). Moreover, willful creation of an emergency situation requires the involvement of particular actors to constitute this specific offense: the perpetrator must be "[a]ny person having actual care, custody or control of an incapacitated adult" and the victim must be said "incapacitated adult." § 9–6–15(b). Contrariwise, battery requires no special individuals to satisfy the elements of its offense. § 61–2–9(c). Therefore, the plain language of the two relevant penal statutes clearly indicates that the defendants were convicted of and sentenced for two distinct criminal offenses. While both crimes arose from the same factual context, the elements of the crimes are so different as to compel the conclusion that they are separate and distinct offenses.

## III.

## CONCLUSION

" 'A verdict of guilty in a criminal case consistent with a reasonable interpretation of the evidence and circumstances proved will not be disturbed by this Court.' Point 6, Syllabus, *State v. Bailey,* 151 W.Va. 796[, 155 S.E.2d 850 (1967) ]." Syl. pt. 2, *State v. Knotts,* 156 W.Va. 748, 197 S.E.2d 93 (1973). Having found no factual or legal errors warranting the reversal of these cases, we affirm the September 11, 1997, sentencing orders of the Circuit Court of Hampshire County upholding the defendants' convictions of and sentences for battery and willful creation of an emergency situation for an incapacitated adult.

Affirmed.