**FILED**
**June 14, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia ex rel.**
**Roland F. Chalifoux, Jr., D.O., and**
**Roland F. Chalifoux Jr., D.O., PLLC,**
**Defendants Below, Petitioners,**

**vs.)  No. 20-0929**

**The Honorable Jeffrey Cramer,**
**Judge of the Circuit Court of the Second Judicial Circuit,**
**and Joseph Moellendick,**
**Respondents.**

**MEMORANDUM DECISION**

In this original jurisdiction proceeding, the petitioners, Roland F. Chalifoux, Jr., D.O., and Roland F. Chalifoux Jr., D.O., PLLC (collectively "Dr. Chalifoux"), by counsel Jeffrey M. Wakefield, David S. Givens and Jordan V. Palmer, petition this Court for a writ of prohibition.  In his petition, Dr. Chalifoux asks this Court to prohibit the Circuit Court of Marshall County from enforcing its September 25, 2020 order denying his motion to include non-parties on the verdict form at the trial of this medical professional liability action.  The respondent herein, Matthew Moellendick, as Executor of the Estate of Joseph Moellendick, by counsel, Geoffrey C. Brown, filed a response in support of the circuit court's order.

Upon consideration of the parties' briefs, oral arguments, and the appendix record, this Court concludes that Dr. Chalifoux has not met the standard for the issuance of a writ of prohibition in this case.  Accordingly, we deny the requested writ of prohibition.  Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case is proper for disposition as a memorandum decision under Rule 21 of the West Virginia Rules of Appellate Procedure.

This case originated in April of 2017 when Joseph Moellendick ("Mr. Moellendick") was treated by Dr. Chalifoux at his office, Valley Pain Management.  Between February and April of 2017, Mr. Moellendick presented to Dr. Chalifoux's office at various times for medical treatment.  On April 4, 2017, Dr. Chalifoux inserted two spinal cord stimulator leads in the epidural space adjacent to Mr. Moellendick's spine during a spinal cord stimulator trial.  The next day, Mr. Moellendick returned to Dr. Chalifoux's office for the removal of the spinal cord stimulator leads due to discomfort.  Then, within hours of leaving Dr. Chalifoux's office, Mr. Moellendick

1

presented to the emergency department at Weirton Medical Center, in Weirton, West Virginia, with complaints of having passed a blood clot in his urine. After being evaluated by CT imaging for possible spinal insult and bleeding, Mr. Moellendick was discharged home.

Two days after his treatment at Weirton Medical Center, on April 7, 2017, Mr. Moellendick went to Summa Health System – Akron Campus (also known as "Akron City Hospital"). While at Akron City Hospital, an MRI revealed that Mr. Moellendick was suffering from a spinal hematoma. The Akron providers then performed surgery on Mr. Moellendick that revealed "thoracic diffuse bleeding due to aspirin and Plavix and thoracic subdural hematoma causing severe spinal cord compression."

On June 21, 2018, Mr. Moellendick filed the instant medical professional liability action against Dr. Chalifoux and Dr. Chalifoux's professional corporation. Mr. Moellendick did not name any other defendant in the action. During discovery, Dr. Chalifoux purportedly identified potential breaches of the standard of care attributable to the providers at Akron City Hospital. Despite maintaining that this State's general liability statute, West Virginia Code § 55-7-13d (2015), does not apply to medical professional liability actions, Dr. Chalifoux filed a "Notice of Non-Party Fault" pursuant to such statute.

Then, on February 6, 2020, Dr. Chalifoux filed a "Notice of Alleged Non-Party Fault and Combined Motion for Placement of Alleged Non-Parties on Verdict Form and Request for Rule 16 Pretrial Management Conference" ("Combined Notice and Motion"). In the Combined Notice and Motion, Dr. Chalifoux asserted that West Virginia Code § 55-7-13d was not applicable to cases filed under the Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1 to -12. Nonetheless, he filed the Combined Notice and Motion identifying the Akron providers as entities and individuals he anticipated placing on the verdict form for purposes of assessing and apportioning fault. By and through his counsel, Mr. Moellendick filed a response in opposition.

On September 25, 2020, the circuit court denied Dr. Chalifoux's request. In its order, the circuit court made three primary findings that supported its denial of the Combined Notice and Motion: (1) West Virginia Code § 55-7B-9 (2016) plainly contemplates that "all alleged parties" does not include health care providers who are not actual parties to the underlying litigation, or who had not previously settled with the plaintiff; (2) Caselaw pre-dating the several liability provisions of the MPLA does not allow health care providers to avoid liability for the entirety of any verdict rendered, and thus "there is no reason to ask the jury to attribute any responsibility" to the Akron providers; and (3) Allowing a non-party on the verdict form would prejudice Mr. Moellendick because he elected not to sue the Akron providers. It is from this order that Dr. Chalifoux has filed the instant petition for writ of prohibition.

When presented with a petition for prohibitory relief, this Court previously has held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). In the case sub judice, Dr. Chalifoux contends that the circuit court exceeded its legitimate powers by refusing to allow a non-party on the verdict form. In such circumstances, we have held:

2

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997). "In determining the third factor, the existence of clear error as a matter of law, we will employ a *de novo* standard of review, as in matters in which purely legal issues are at issue." *State ex rel. Gessler v. Mazzone*, 212 W.Va. 368, 372, 572 S.E.2d 891, 895 (2002).

To decide whether Dr. Chalifoux is entitled to prohibitory relief, we also must consider whether the circuit court correctly interpreted the statutes governing liability—both West Virginia Code §§ 55-7-13d and 55-7B-9—and whether the circuit court properly denied Dr. Chalifoux's Combined Notice and Motion. This Court has held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.,* 195 W. Va. 573, 466 S.E.2d 424 (1995).

The third and most significant *Hoover* factor looks to the legal correctness of the lower court's order the enforcement of which the petitioner seeks to prevent. *See* Syl. pt. 4, in part, *Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15. Similarly, the fourth *Hoover* factor reviews whether the lower court has made the alleged error previously or whether the lower court has disregarded procedural or substantive law in rendering its ruling. *Id.*

In his petition for writ of prohibition, Dr. Chalifoux argues that the circuit court clearly erred by finding that non-parties could not be added to the verdict form in the underlying medical professional liability action. More specifically, Dr. Chalifoux contends that the circuit court's ruling misapplies West Virginia Code § 55-7B-9 and, as a result, provides MPLA defendants with *fewer* several liability protections than other defendants under the laws of this State.

West Virginia Code § 55-7B-9, "Several Liability" provides, in part:

(a) In the trial of a medical professional liability action under this article involving multiple defendants, the trier of fact shall

3

report its findings on a form provided by the court which contains each of the possible verdicts as determined by the court. Unless otherwise agreed by all the parties to the action, the jury shall be instructed to answer special interrogatories, or the court, acting without a jury, shall make findings as to:

(1) The total amount of compensatory damages recoverable by the plaintiff;

(2) The portion of the damages that represents damages for noneconomic loss;

(3) The portion of the damages that represents damages for each category of economic loss;

(4) The percentage of fault, if any, attributable to each plaintiff; and

(5) The percentage of fault, if any, attributable to each of the defendants.

(b) The trier of fact shall, in assessing percentages of fault, consider the fault of *all alleged parties*, including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury.

(Emphasis added).

Dr. Chalifoux contends that the phrase "all alleged parties" includes more than the parties to the lawsuit. To support this argument, Dr. Chalifoux notes that the language in subsection (b) is relatively new. *See id.* Prior to July 1, 2016, subsection (b) read, that

[i]n assessing percentages of fault, the trier of fact shall consider *only the fault of the parties in the litigation at the time the verdict is rendered* and *may not consider the fault of any other person who has settled a claim with the plaintiff arising out of the same medical injury*. Provided, That, upon the creation of the patient injury compensation fund provided for in article twelve-c, chapter twenty-nine of this code, or of some other mechanism for compensating a plaintiff for any amount of economic damages awarded by the trier of fact which the plaintiff has been unable to collect, the trier of fact shall, in assessing percentages of fault, consider the fault of all alleged parties, including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury.

(Emphasis added).

4

Most of the language from West Virginia Code § 55-7B-9(b) was removed from the statute in 2016. However, pertinent to the arguments presented in this case, the MPLA struck the phrase "parties to the litigation" and retained the phrase "all alleged parties"—therefore, Dr. Chalifoux contends that the Legislature intended for "all alleged parties" to mean that more than sued parties are to be included on the verdict form. Moreover, Dr. Chalifoux contends that it was the Legislature's intent to model the MPLA after the 2015 reforms to West Virginia Code § 55-7-13d.

In 2015, the Legislature made major changes to this State's general liability statute, W. Va. Code § 55-7-1 to -31. The changes abolished joint and several liability and instituted a new modified comparative fault system. *See* W. Va. Code §§ 55-7-13 and 55-7-24; *see also* W. Va. Code § 55-7-13a, -13b, -13c, -13d. Under the amended statute, liability is several and defendants are responsible for only their proportion of fault. *See id.* § 55-7-13c. Moreover, the new statute allows juries to consider the fault of non-parties. *See id.* § 55-7-13d. Where a plaintiff has settled with a party or a non-party before the verdict, the plaintiff's recovery will be reduced in proportion to the percentage of fault assigned to the settling party or non-party. *Id.* Under this new framework, defendants no longer need to file third-party complaints against non-parties if they wish to assert claims for contribution to have fault assessed against other potentially liable parties and no longer need to give notice that they intend to have the fault of non-parties considered. This procedure permits the jury to consider fault of all potentially liable parties.

Here, the circuit court examined West Virginia Code § 55-7B-9 and found it to be clear and unambiguous. In its order, the circuit court stated:

> As in any case where statutory language i[s] clear and unambiguous, the [circuit c]ourt is obligated to apply the statute as written. According to the plain language of W. Va. Code § 55-7B-9, the jury must apportion fault in any case involving more than one defendant. That does not apply to this case where there is one and only one alleged tortfeasor. The statute also contemplates the jury's consideration of "alleged parties," such as individuals who previously settled with a plaintiff.
>
> The issue, then, is whether the unnamed Akron healthcare providers are "alleged parties" with respect to this case. The [circuit c]ourt concludes that they are not.

The circuit court further supported its decision by stating that because Mr. Moellendick made no claim against any healthcare provider in Akron, those unnamed providers "are not 'alleged parties' based on the Complaint." Moreover, because Dr. Chalifoux failed to file a third-party complaint, there are no allegations against the Akron providers that would make them alleged parties.

After our review of the circuit court's order and the pertinent law, we conclude that Dr. Chalifoux has failed to demonstrate that the circuit court's order rises to the level of clear error as a matter of law. Thus, while there were arguments made that supported both Dr. Chalifoux's

5

Combined Notice and Motion and Mr. Moellendick's response, Dr. Chalifoux has not demonstrated that he is entitled to the issuance of a writ of prohibition under either the third or the fourth *Hoover* factors.[1] Rather, based on our consideration of the relevant *Hoover* factors, we discern no reason this case may not proceed to a final resolution before the circuit court. Thereafter, and with the benefit of a complete record, the parties, should they choose to do so, may raise their issues in a direct appeal.

Having considered the elements for the issuance of a writ of prohibition, we conclude that Dr. Chalifoux has failed to establish that he is entitled to prohibitory relief in this case. Accordingly, the requested writ of prohibition is hereby denied.

Writ denied.

---

[1] While he primarily relies upon the third and fourth *Hoover* factors, Dr. Chalifoux also contends, without analysis, that the remaining three *Hoover* factors weigh in his favor. Because Dr. Chalifoux fails to argue or adequately brief his position as to the remaining *Hoover* factors, we decline to address them.

> "In the absence of supporting authority, we decline further to review [these] alleged error[s] because [they] have not been adequately briefed." *State v. Allen*, 208 W. Va. 144, 162, 539 S.E.2d 87, 105 (1999). As we stated in *State, Dept. of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995), "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" (*quoting United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)). Furthermore, this Court has adhered to the rule that "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996). *Accord State v. Adkins*, 209 W. Va. 212, 216 n. 5, 544 S.E.2d 914, 918 n. 5 (2001); *State v. Easton*, 203 W. Va. 631, 642 n. 19, 510 S.E.2d 465, 476 n. 19 (1998); *State v. Lilly*, 194 W. Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (noting that "appellate courts frequently refuse to address issues that appellants . . . fail to develop in their brief.").

*State v. Kaufman*, 227 W. Va. 537, 555 n. 39, 711 S.E.2d 607, 625 n. 39 (2011).

6

**ISSUED:** June 14, 2021


**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice Tim Armstead


No. 20-0929 *SER Roland F. Chalifoux, Jr., D.O. v. Cramer*

ARMSTEAD, J., dissenting:

At its core, this case asks us to decide whether the Legislature intended to deny defendants in medical malpractice cases the same ability to identify and apportion fault to non-parties as it has provided to defendants in all other types of actions. Because I believe the answer to this question is clearly "no," I respectfully dissent from the majority's holding in this matter and would grant the requested writ.

As the majority states, this Court's consideration of whether a writ should be granted is governed by the standard set forth in *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), in which the Court held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

7

*Id.,* at syl. pt. 4.

Although, as specifically stated in *Hoover*, not all five factors  must be met for a writ to be granted, I believe that Dr. Chalifoux lacks other "adequate means" to obtain the relief he requests, as set forth in factor one, and by denying the writ, he will be significantly prejudiced, as discussed in factor two.  The ability to identify non-party tortfeasors would permeate all aspects of the trial, including both liability and damages.  While he certainly could proceed to trial, if on appeal it is determined that he should have been permitted to identify and seek apportionment of damages against potential non-party tortfeasors, there would appear to be no other plausible remedy but to start from scratch and retry the case in all aspects, resulting in significant wasted time and expense to all parties.  While the majority suggests that denying the writ and proceeding to trial would provide the "benefit of a complete record" should Dr. Chalifoux then proceed with a direct post-trial appeal to this Court, the fact of the matter is that such a course of action would not provide this court a "complete" record.  Instead, the significant missing piece of such record would be the evidence and testimony relating to the actions or inactions, and potential liability, of the non-parties who were excluded from trial by the majority's denial of the writ.

Giving the third factor discussed in *Hoover* the substantial weight it is to be afforded, for the reasons set forth below the circuit court's order is "clearly erroneous as a matter of law."  In addition, while the question presented in this matter has been considered by at least one federal court interpreting the West Virginia statutes at issue here, it appears to be a question of first impression before this Court, thus fulfilling factor five of the *Hoover* standard.

The circuit court, and the majority of this Court in its decision affirming the circuit court, have misinterpreted West Virginia Code § 55-7-13d and § 55-7B-9, in such a manner as to deny Dr. Chalifoux the ability to file a "Notice of Non-Party Fault" identifying and alleging liability on the part of Akron City Hospital, ("Akron") as a non-party tortfeasor.  Akron was the medical provider who actually diagnosed the Plaintiff, Mr. Moellendick, as suffering from a spinal hematoma and performed surgery on Mr. Moellendick.  By denying Dr. Chalifoux the ability to identify a non-party entity that he maintains is at least partially at fault for Mr. Moellendick's injuries, the majority has plainly disregarded the legislative history and intent of the statutory provisions relating to the apportionment of fault to non-party tortfeasors at trial.

While I believe that Dr. Chalifoux should be permitted to file his "Notice of Non-Party Fault" and present evidence at trial as to the potential fault of Akron in relation to Mr. Moellendick's injuries, the basis of my belief in this regard differs from the rationale presented by Dr. Chalifoux.  As the majority discusses, Dr. Chalifoux argues that the language "all alleged parties" in West Virginia Code § 55-7B-9 is relatively new, having been changed from "parties to the litigation" in 2016.  According to Dr. Chalifoux, such change reflects the Legislature's intent to model the Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1 *et seq.*, after changes the Legislature made in 2015 to our State's general joint and several liability laws, found at West Virginia Code § 55-7-1 *et seq.*

However, reviewing the history of West Virginia Code § 55-7B-9, it is clear that while the language "parties to the litigation" was deleted from the statute in 2016, the language "all alleged

parties" has been included in the text of that statute since the passage of reforms to the MPLA adopted by the Legislature in 2003. Indeed, the language "parties to the litigation" was not *changed* to "all alleged parties" in 2016. This distinction is an important one, and in order to understand its relevance it is necessary to discuss the changes to West Virginia Code § 55-7B-9 since 1986.

Prior to 2003, the relevant section of West Virginia Code § 55-7B-9, subsection (b), adopted in 1986, provided as follows:

> In every medical professional liability action, the court shall make findings as to the total dollar amount awarded as damages to each plaintiff. The court shall enter judgment of joint and several liability against every *defendant* which bears twenty-five percent or more of the negligence attributable to all *defendants.* The court shall enter judgment of several, but not joint, liability against and among all *defendants* which bear less than twenty-five percent of the negligence attributable to all *defendants*.

W. Va. Code §55-7B-9(b) (1986 version)(emphasis added).

Clearly, the 1986 version of subsection (b) represented the Legislature's first steps toward eliminating joint and several liability in medical malpractice actions. The Legislature started this gradual process by maintaining joint and several liability for tortfeasors who were determined to be twenty-five percent or more responsible for the total negligence attributable to all the defendants, while holding those responsible for less than twenty-five percent of the total negligence severally liable.

In 2001, this Court was called upon to determine whether, pursuant to the 1986 version of W. Va. Code § 55-7B-9(b), a defendant hospital in a medical malpractice action "was entitled to an instruction allowing the jury to apportion fault between itself and other, alleged non-party tortfeasors." *Rowe v. Sisters of Pallottine Missionary Society*, 211 W. Va. 16, 25, 560 S.E.2d 491, 500 (2001). This Court determined that, under the 1986 version of the statute, the defendant hospital was not entitled to the requested instruction relating to non-party liability because W. Va. Code § 55-7B-9, "by its own terms, applies only to the parties to a medical professional liability action and does not apply to non-party tortfeasors." *Id.* Of particular significance, this Court held that: "[t]he Legislature *specifically chose the terms 'plaintiff' and 'defendant'* in discussing joint and several liability in *W.Va. Code* § 55-7B-9(b) – we decline to read these terms to mean 'potential defendants' or other non-parties to the action, as the appellant urges." *Id.*

Two years later, in 2003, the Legislature modified the language on which the *Rowe* decision was based, removing the term "defendants" from subsection (b). At that time, our state faced a crisis in relation to trauma and emergency room care which threatened to result in the closure of emergency room facilities throughout the state. The Legislature responded to this crisis by making substantial revisions to the MPLA. In W. Va. Code § 55-7B-1, the Legislature provided its "Legislative findings and declaration of purpose" for these revisions to Article 7B of Chapter

55. While the full findings and declarations are lengthy and detailed, portions relevant to this action include:

> The Legislature hereby finds and declares that the citizens of this state are entitled to the best medical care and facilities available and that health care providers offer an essential and basic service which requires that the public policy of this state encourage and facilitate the provision of such service to our citizens;

> That as in every human endeavor the possibility of injury or death from negligent conduct commands that protection of the public served by health care providers be recognized as an important state interest;

> That our system of litigation is an essential component of this state's interest in providing adequate and reasonable compensation to those persons who suffer from injury or death as a result of professional negligence, and any limitation placed on this system must be balanced with and considerate of the need to fairly compensate patients who have been injured as a result of negligent and incompetent acts by health care providers;

> * * *

> That it is the duty and responsibility of the Legislature to balance the rights of our individual citizens to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers and health care facilities who can themselves obtain the protection of reasonably priced and extensive liability coverage;

> That in recent years, the cost of insurance coverage has risen dramatically while the nature and extent of coverage has diminished, leaving the health care providers, the health care facilities and the injured without the full benefit of professional liability insurance coverage;

> * * *

> Therefore, the purpose of this article is to provide for a comprehensive resolution of the matters and factors which the Legislature finds must be addressed to accomplish the goals set forth in this section. In so doing, the Legislature has determined that reforms in the common law and statutory rights of our citizens must

10

be enacted together as necessary and mutual ingredients of the appropriate legislative response relating to:

     (1) Compensation for injury and death;

     (2) The regulation of rate making and other practices by the liability insurance industry, including the formation of a physicians' mutual insurance company and establishment of a fund to assure adequate compensation to victims of malpractice; and

     (3) The authority of medical licensing boards to effectively regulate and discipline the health care providers under such board.

W. Va. §55-7B-1 (2003). These findings are important because they not only provide the legislative intent for the 2003 changes to the statute, they also show that the changes to Article 7, along with the changes made by the Legislature to other code sections as part of the 2003 reforms, were all part of a combined legislative scheme and purpose to address the medical health crisis then facing the state.

During the 2003 Legislative Session, these findings and the changes to the MPLA were adopted by the Legislature through the passage of House Bill 2122. In that legislation, W. Va. Code § 55-7B-9(b) was rewritten to provide:

     (b) In assessing percentages of fault, the trier of fact shall consider only the fault of the parties in the litigation at the time the verdict is rendered and shall not consider the fault of any other person who has settled a claim with the plaintiff arising out of the same medical injury. ***Provided, That, upon the creation of the patient injury compensation fund*** provided for in article twelve-c, chapter twenty-nine of this code, or of some other mechanism for compensating a plaintiff for any amount of economic damages awarded by the trier of fact which the plaintiff has been unable to collect, the trier of fact shall, in assessing percentages of fault, ***consider the fault of all alleged parties, including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury***.

W. Va. Code § 55-7B-9(b)(2003)(emphasis added).

These changes are relevant to the question before us. First, they show that, as early as 2003, the Legislature deleted the term "defendants" and, subject to the Patient Injury Compensation Fund proviso, replaced it with "all alleged parties." No longer was the justification cited by the *Rowe* Court for denying the consideration of a non-party's liability, namely the use of

11

the term "defendants," present in the subsection. Secondly, the Legislature made clear that, upon the creation of the Patient Injury Compensation Fund authorized by House Bill 2122, a court was to consider the "fault of all alleged parties." The Patient Injury Compensation Fund was subsequently established, under the direction of the State Board of Risk and Insurance, which filed Legislative Rules governing the operation of such fund with the West Virginia Secretary of State on May 13, 2005. *See* 115 C.S.R. 7-1 *et seq.*

In the Legislative Rules governing the Patient Injury Compensation Fund, the Purpose of the fund was stated as the following:

> **§115-7-2. Purpose.**
>
> Subject to applicable limitations, the purpose of the patient injury compensation fund is to provide fair and reasonable compensation to qualified claimants in medical professional liability actions for economic damage awards that are uncollectible *because of statutory limitations on the recovery of economic damages*.

(Emphasis Added). This provision is often thought to refer only to the statutory caps on economic damages contained in W. Va. Code § 55-7B-9c, which imposed a $500,000 cap on economic damages in certain circumstances. However, W. Va. Code § 29-12C-1, which established a board to study the creation of the Patient Injury Compensation Fund stated that the purpose of such a fund would be to "reimburse claimants in medical malpractice actions for any portion of economic damages awarded which are uncollectible due to statutory limitations on damage awards for trauma care and/or *the elimination of joint and several liability of tortfeasor health care providers and health care facilities*." (Emphasis added).

Once the Patient Injury Compensation Fund was established, the Legislative Rule defining "Statutory limitations of economic damages" also specifically included those limitations imposed by the newly modified joint and several liability provisions of W. Va. Code § 55-7B-9. The Legislative Rule stated:

> 3.16. "Statutory limitations on the recovery of economic damages" means the limitations on recovery of economic damages in a medical malpractice action due to negligent treatment of emergency conditions at a designated trauma care center pursuant to West Virginia Code § 55-7B-9c *or by operation of the joint and several liability principles and standards set out in West Virginia Code § 55-7B-9*.

115 C.S.R. 7-3.16 (2005 version effective July 1, 2005)(emphasis added).

Therefore, once the Patient Injury Compensation Fund was established, in or about 2005, it is clear that the provision of W. Va. Code § 55-7B-9(b) requiring a court to consider the "fault

of all alleged parties, including the fault of any person who has settled a claim with the plaintiff arising out of the same injury" became legally effective.[2]

While the majority would have us read the term "all alleged parties" to exclude non-party tortfeasors, both the language of the statute and the history of its development as set forth above belie that conclusion. First, it is clear that the Legislature only intended for courts to consider the fault of all alleged parties once there was a mechanism in place to compensate claimants who, because of such consideration, were unable to collect the full amount of all actors' liability. In both the statute and the Legislative rules interpreting it, the Legislature made clear that potential beneficiaries of the Patient Injury Compensation Fund included those claimants unable to be fully compensated due to the "operation of the joint and several liability principles set out in W.Va. Code § 55-7B-9."

The majority apparently believes the protection afforded by the Patient Injury Compensation Fund would only apply where a plaintiff could not be fully compensated due to the statutory caps imposed in W. Va. Code § 55-7B-9c or the inability of named defendants or settling parties to pay. However, as set forth above, neither the statute authorizing the Patient Injury Compensation Fund, nor the language of W. Va. Code § 55-7B-9, support this conclusion. It is evident that the Legislature did not intend for the term "all alleged parties" to consist only of parties named in the Plaintiff's complaint, otherwise it would not have added the phrase "***including*** any person who has settled a claim with the plaintiff." Obviously, persons settling a claim with the Plaintiff may be persons who were never named in a complaint. By using the term "***including*** the fault of any person who has settled a claim with the plaintiff" immediately following the term "***all*** alleged parties," the Legislature could not have intended that the phrase "all alleged parties" only include parties to the litigation. Moreover, when the term "includes" is used, as in this case, it generally means "to contain as a part of something" and "typically indicates a partial list." *See Postlewait v. City of Wheeling,* 231 W. Va. 1, 4, 743 S.E.2d 309, 312 (2012). Accordingly, the

---

[2] In its order, the circuit court found that because the Plaintiff makes no allegations against Akron, and Defendants maintain they are not permitted to file a third-party complaint for contribution, Akron is therefore not an "alleged party" pursuant to W. Va. Code § 55-7B-9. This finding is contrary to the basic principle of eliminating joint and several liability embodied within W. Va. Code § 55-7B-9. If tortfeasors only become "alleged parties" if the ***Plaintiff*** alleges some wrongdoing on their part, such finding would essentially allow the ***Plaintiff*** solely to make the decision as to who could or could not be held liable and would not allow a defendant to identify non-party tortfeasors. Likewise, if a Defendant is not permitted to file a third-party claim for contribution against the alleged non-party tortfeasor, as Dr. Chalifoux alleges in this case, then precluding a defendant from alleging liability against such non-party tortfeasor pursuant to W. Va. Code § 55-7B-9 would essentially deny the defendant any reasonable avenue to assert such liability – a right I believe is granted Dr. Chalifoux pursuant to W. Va. Code § 55-7B-9 and W. Va. Code § 55-7-13d. *See Hershberger v. Ethicon Endo-Surgery, Inc.*, 2:10-CV-00837, 2012 WL 1067941 (S.D. W. Va. Mar. 29, 2012) (finding that failure to join joint tortfeasors does not "justify exclusion of all evidence of third-party liability").

Legislature clearly did not intend to exclude from consideration of fault those alleged parties who were not named in the litigation.

The circuit court also erroneously held that "According to the plain language of W.Va. Code § 55-7B-9, the jury must apportion fault in any case involving more than one defendant. That does not apply to this case where there is one and only one alleged tortfeasor." This finding is clearly in error as is reflected by a simple review of the Complaint which names "Roland F. Chalifoux, Jr., D.O." as a defendant and "Roland F. Chalifoux, Jr., D.O. PLLC, a West Virginia Professional Limited Liability Company" as a separate defendant. The circuit court simply dismissed, in a cursory footnote in its order, the fact that the Plaintiff named two separate and distinct defendants, stating "[t]he claims against Dr. Chalifoux's professional corporation sound in vicarious liability." The mere fact that the Plaintiff may seek recovery from Dr. Chalifoux's practice, which is named in the Complaint as a PLLC, under a theory of agency or vicarious liability does not change the fact that they are two separate and distinct defendants, each possessing potential legal defenses that may vary from one another. Obviously, the Plaintiff felt it necessary to name both Dr. Chalifoux and the separate PLLC in order to assert his claims against each defendant. The circuit court committed clear error in its finding that these two separate and distinct defendants constitute "one and only one alleged tortfeasor" for purposes of avoiding the applicability of W. Va. Code § 55-7B-9.[3]

Moreover, the majority states that "we must consider whether the circuit court correctly interpreted the statutes governing liability – both West Virginia Code section 55-7-13d and section 55-7B-9 – and whether the circuit court properly denied Dr. Chalifoux's Combined Notice and Motion." It is significant here that the majority recognized that we must look not only to the provisions of W. Va. Code § 55-7B-9 but must also consider W. Va. Code § 55-7-13d. The pertinent provisions of W. Va. Code § 55-7-13d, which govern consideration of non-party fault in tort actions provide:

> (1) In assessing percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged damages regardless of whether the person was or could have been named as a party to the suit;
>
> (2) Fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice no later than one hundred eighty days after service of process upon said defendant that a nonparty was wholly or partially at fault. Notice shall be filed with the court and served upon all parties to the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification

---

[3] Even assuming, *arguendo*, that the circuit court's finding that there was only one defendant in this case was correct, and thus W. Va. Code § 55-7B-9 did not apply, I believe the general provisions of W. Va. Code § 55-7-13d would still apply and require the court to consider the fault of the non-party tortfeasors.

14

of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault;

(3) In all instances where a nonparty is assessed a percentage of fault, any recovery by a plaintiff shall be reduced in proportion to the percentage of fault chargeable to such nonparty. Where a plaintiff has settled with a party or nonparty before verdict, that plaintiff's recovery will be reduced in proportion to the percentage of fault assigned to the settling party or nonparty, rather than by the amount of the nonparty's or party's settlement; . . .

W. Va. Code § 55-7-13d. While the majority outlines the 2015 changes to W. Va. Code § 55-7-13d, the majority opinion fails to specifically discuss whether W. Va. Code § 55-7-13d may also be applied to a cause of action brought under the MPLA. Both the circuit court's order and the majority opinion issued by this Court appear to simply assume that the broader statutory provisions contained in W. Va. Code § 55-7-13d do not apply in the present case.

However, this Court has long acknowledged that statutes should be read in *pari materia* and that "[o]ur rules of statutory construction require us to give meaning to all provisions in a statutory scheme, if at all possible." *Community Antenna Services, Inc. v. Charter Communications VI, LLC,* 227 W. Va. 595, 604, 712 S.E.2d 504, 514 (2011). In *Community Antenna,* this Court further held:

We must apply statutes so that no legislative enactment is meaningless, and to read them to harmonize with legislative intent. 'Statutes which relate to the same subject matter should be read and applied together so that ***the Legislature's intention can be gathered from the whole of the enactments.'*** 'It is always presumed that the legislature will not enact a meaningless or useless statute.' . . . 'Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regraded in *pari materia* to assure recognition and implementation of the legislative intent. ***Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.***

*Id.* at 604-605, 712 S.E.2d at 513-14. (Internal citations omitted, emphasis added). This Court in *Community Antenna* relied upon the holding in *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908), in which this Court, more than a century ago, discussed the exact circumstances which I believe are present in this case:

A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who

15

drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

*Id.* at syl. pt. 5.

Dr. Chalifoux alleges that the 2016 amendments to W. Va. Code § 55-7B-9 changed the language requiring that a court shall consider the "fault of the parties in the litigation" to instead require that a court consider "fault of all alleged parties." However, as set forth above, the language requiring the court to consider the "fault of all alleged parties," subject to the proviso relating to the Patient Injury Compensation Fund, has been included in the statute since 2003. The 2016 amendment did delete the language that originally stated the court would consider only the fault of the "parties to the litigation" as well as the proviso stating that once the Patient Injury Compensation Fund or a similar fund was established, the court would consider the "fault of all parties." It appears that the 2016 amendment was merely a "clean-up" to remove the proviso delaying applicability of the phrase "fault of all alleged parties," since the Patient Injury Compensation Fund had already been established. Such revision made clear that, regardless, the applicable standard was now that the trier of fact must consider the "fault of all alleged parties."

Dr. Chalifoux also alleges that the 2016 changes to W. Va. Code § 55-7B-9c were designed to model the MPLA after the 2015 reforms to the general joint and several liability statute contained in W. Va. Code § 55-7-1 *et seq.,* and more particularly W. Va. Code § 55-7-13d. However, because the abolition of joint and several liability was first imposed by the Legislature in the context of the MPLA, partially in 1986 and more fully in 2003, it is just as plausible that the abolition of joint and several liability as to civil actions in general, implemented with the Legislature's revisions to W. Va. Code § 55-7-13d*,* was the natural continuation of this effort and statutory scheme that began with the MPLA. Regardless, it is clear that both W. Va. Code § 55-7B-9c and W. Va. Code § 55-7-13d serve a common purpose – to enact a statutory scheme imposing several liability rather than joint and several liability. Accordingly, they should be read in *para materia* pursuant to this Court's holdings in *Community Antenna* and *Snyder.*

As the majority recognizes, W. Va. Code § 55-7-13d creates a procedure for civil actions in general in which "defendants no longer need to file third party complaints against non-parties if they wish to assert claims for contribution to have fault assessed against other potentially liable parties" and which "permits the jury to consider fault of all potentially liable parties." The majority cites no statutory authority or case law which expressly prohibits the provisions of W. Va. Code § 55-7-13d from applying in an MPLA case. Indeed, W. Va. Code § 55-7-13d states:

(e) Damages. — For purposes of this section, "damages" includes all damages which may be recoverable for personal injury, death, or loss of or damage to property, including those recoverable in a wrongful death action.

* * *

16

(h) Applicability. — This section *applies to all causes of action* arising or accruing on or after the effective date of its enactment. The amendments to this section enacted during the 2016 regular session of the Legislature shall *apply to all causes of action* accruing on or after the effective date of those amendments.

(Emphasis added).

Nowhere in W. Va. Code § 55-7-13d does the language exclude its application to matters filed under the MPLA. Instead, the express language of W. Va. Code § 55-7-13d provides that it "applies to all causes of action." Indeed, even prior to its effective date, this Court recognized that the 2015 legislation that included these revisions to W. Va. Code § 55-7-13d comprised "a series of new statutes which in fact do purport to *fully occupy the field of comparative fault* and the consideration of 'the fault of parties and nonparties to a civil action[.]'" *Modular Bldg. Consultants of W. Va., Inc. v. Poerio, Inc.*, 235 W. Va. 474, 486 n.12, 774 S.E.2d 555, 567 n.12 (2015) (Emphasis added). If these changes were designed to "fully occupy the field of comparative fault," they certainly did not exclude MPLA actions from their scope.

The circuit court erroneously determined W. Va. Code § 55-7-13d to be inapplicable in this case by stating that "W.Va. Code § 55-7-13d must be read in conjunction with W.Va. Code § 55-7-13c, which is expressly inapplicable to MPLA claims like the present." However, a clear reading of W. Va. Code § 55-7-13d reveals no language excluding its applicability to MPLA actions. The circuit court's reliance on W. Va. Code § 55-7-13c to interpret W.Va. Code § 55-7-13d is flawed. In fact, the Legislature's exclusion of MPLA actions in W. Va. Code § 55-7-13c and its failure to make a similar exclusion in W. Va. Code § 55-7-13d actually supports the conclusion that it intended W. Va. Code § 55-7-13d to apply to MPLA actions. As the United States Supreme Court has held, "[w]e have often noted that when 'Congress includes particular language in one section of a statute but omits it in another' – let alone in the very next provision – this Court '[p]resumes' that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358, 134 S.Ct. 2384, 2390 (2014).

As set forth above, the Legislature made very detailed findings as to the public policy justifications for the 2003 changes to the MPLA including the abolition of joint and several liability for actions brought pursuant to the MPLA. Despite these public policy concerns, the majority opinion would allow defendants in all other types of matters to allege liability by non-party tortfeasors pursuant to W. Va. Code § 55-7-13d while denying such right to defendants in actions brought under the MPLA. Because the Legislature's gradual movement away from joint and several liability first began with MPLA actions, such a result not only defies the legislative history and intent as reflected in statutory revisions abrogating joint and several liability, but indeed defies logic itself.

The application of W. Va. Code § 55-7-13d to MPLA actions in West Virginia is certainly not unprecedented. As recently as 2019, the United States District Court for the Southern District of West Virginia, permitted a plaintiff in a civil action filed under the MPLA to file a "notice of consideration of fault of nonparties" pursuant to W. Va. Code § 55-7-13d (a)(2). In *Estate of*

*Burns v. Cohen*, No. 5:18-cv-00888, 2019 WL 4463318 (S.D.W. Va. Sept. 17, 2019), plaintiff filed a medical malpractice claim against Defendant, Dr. Cohen, alleging negligence on the part of Dr. Cohen involving the placement of a percutaneous endoscopic gastrostomy ("PEG"). The complaint further alleged that, following the procedure, the decedent was transferred to White Sulphur Springs Medical Center, where staff discovered that decedent had pulled the PEG tube out. Decedent was then transferred to Greenbrier Valley Medical Center where she died. According to the complaint, her death resulted, at least in part, due to the pulled tube.

Defendant Cohen filed a "notice of consideration of fault of nonparties" alleging that White Sulphur Springs Medical Center and/or Dorris Ragsdale, M.D. "may be wholly or partially at fault for the alleged claims, injuries and/or damages set forth by Plaintiff in this civil action." The Plaintiff filed a motion to dismiss Dr. Cohen's notice of consideration of fault of nonparties, alleging that it was not timely filed pursuant to W. Va. Code § 55-7-13d. The *Burns* court denied the Plaintiff's motion and held that, although Dr. Cohen had not filed his notice within the 180-day period provided for under W. Va. Code § 55-7-13d, his notice was proper.[4]

I believe the United States District Court's conclusion that W. Va. Code § 55-7-13d applies to cases filed pursuant to the MPLA is the correct interpretation of the interplay between the MPLA and W. Va. Code § 55-7-13d.

Based on the clear legislative intent, reflected not only in the present language of W. Va. Code § 55-7B-9 and W. Va. Code § 55-7-13d, but in the history and progression of such provisions toward the elimination of joint and several liability and the ability of defendants to assert liability by non-party tortfeasors, Dr, Chalifoux is entitled to the extraordinary relief he seeks from this Court. The circuit court's order denying Dr. Chalifoux the right to identify and seek apportionment of fault to non-party tortfeasors was "clearly erroneous as a matter of law" as discussed in *Hoover*. Accordingly, the writ of prohibition should be granted and I respectfully dissent from the majority's opinion denying the requested writ.

---

[4] Similar to the present case, in *Burns* the Defendant stated that the W. Va. Code § 55-7-13d notice of nonparty fault was not required because the case against him was filed pursuant to the MPLA. Nonetheless he filed such notice and the court denied the Plaintiff's "Motion to Dismiss Defendant's Notice of Consideration of Fault of Nonparty Pursuant to W.Va. Code § 55-7-13d." The *Burns* case was subsequently transferred to Judge Frank Volk and the estate of Ms. Burns filed a motion in limine seeking a determination that the 2015 version of the MPLA applied to that action rather than the amended 2016 version. As is the case here, the Plaintiff in *Burns* argued that the 2016 version required the court to consider the fault of "all alleged parties." Because the 2016 version of the MPLA was in effect at the time the Complaint was filed, Judge Volk entered an unpublished Memorandum Opinion on March 11, 2020, finding that the 2016 version of the statute applied.